# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAWN BALL, | : | Civil No. 1:09-CV-846 |
| | : | |
| Plaintiff, | : | (Chief Judge Kane) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| SUP'T. LAMAS, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

I.   **Statement of Facts and of the Case.**

    A.   **Introduction**

The plaintiff, Dawn Ball, is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses, and who, in other litigation before this Court, candidly acknowledges that she is profoundly disturbed, informing the Court that:

> My mental health is declining. I suffer from OCD so bad I scrub my hands till they bleed, confusion, PTSD, disassociative disorder, I smell, see and hear things not there, severely stressed, phobias, agoraphobia, severe anxiety, lack of interest in things, lack of arousal in things, racing thoughts, suicidal, cognitive problems and disorders, lack of interest in life, disoriented, dizzyness, paranoid–schizophrenic, constant worry, frightened scared, can't properly care for myself, tics, bipolar, manic depressive, mood swings that are so severe, can't think clearly....

Ball v. Beard, No. 1:09-CV-845 (Doc. 42, pp.6-7).

Furthermore, Ball is also an inmate who is alleged to engage in destructive, self-defeating and senseless behavior, conduct which was aptly described by prison officials in one of Ball's companion cases in the following terms:

> [Y]our destruction of multiple cells . . . by spreading feces and urine combined with paper products from your property and cell related property made it impossible to identify your missing property item by item as you submit.

(Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa., Doc. 27, p.13)

Ball is also, by her own admission, an inmate with a propensity of sudden, explosive rages, as illustrated by the civil complaint which she has filed Ball v. Barr, No.1:11-CV-2240 (M.D.Pa.).  In this complaint, Ball describes an episode in which a discussion regarding the aesthetic qualities of a piece of cornbread escalated in a matter of moments into a profanity-laced wrestling match over a food tray.

While she suffers from paranoia, schizophrenia, and experiences these visual and auditory hallucinations, Ball is also a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison.  Indeed, at present Ball has a total of twenty-two lawsuits pending before this Court.[1]  Ball has also been a prodigiously unsuccessful litigant, who has had at

---

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther,

least three prior lawsuits dismissed either for failure to exhaust her administrative remedies, or as frivolous on the grounds that the lawsuits failed to state a claim upon which relief could be granted. See, e.g., Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.); Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.); Ball v. Butts, No. 1:11-CV-1068, (M.D.Pa.); Ball v. Butts, No. 11-2862, 2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

The history of frivolous and meritless litigation in federal court by this plaintiff began in March of 2008, when Ball filed a complaint in the case of Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.). On December 10, 2008, the district court dismissed this civil action for failure to state a claim upon which relief may be granted, specifically finding that Ball had failed to exhaust her administrative remedies, and further finding that any appeal of this dismissal would be deemed frivolous and not in good faith. Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.) (Doc. 36) Ball appealed this ruling, (Doc. 37), and on July 22, 2010, the United states Court of Appeals for the Third Circuit affirmed the dismissal of this action. Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.)(Doc. 44).

---

No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Giroux No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.); Ball v Curham, No. 1:12-CV-12 (M.D.Pa.).

On May 5, 2009, Ball filed a second civil action in the case of <u>Ball v. Hartman</u>, No. 1:09-CV-844 (M.D. Pa.). Like her prior lawsuit, this action was dismissed by the district court, which once again found Ball's complaint to be frivolous. <u>Ball v. Hartman</u>, No. 1:09-CV-844 (M.D. Pa.) (Docs 32, 33, and 36). Ball appealed this dismissal order, <u>Ball v. Hartman</u>, No. 1:09-CV-844 (M.D. Pa.) (Doc 34), but her appeal of this case was summarily denied by the court of appeals, <u>Ball v. Hartman</u>, No. 1:09-CV-844 (M.D. Pa.) (Docs 48), and on October 29, 2010, this case was closed by the appellate court with the issuance of its mandate dismissing this appeal pursuant to 28 U.S.C. § 1915(e)(2)(B).[2] <u>Ball v. Hartman</u>, No. 1:09-CV-844 (M.D. Pa.) (Doc. 48).

While this action was pending, Ball filed yet another lawsuit in the case of <u>Ball v. Butts</u>, No. 1:11-CV-1068, (M.D.Pa.) on June 3, 2011. <u>Ball v. Butts</u>, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 1) On June 15, 2011, upon a screening review of this complaint, the district court dismissed this action for failure to state a claim upon which relief could be granted. <u>Ball v. Butts</u>, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 8). Ball appealed

---

[2] 28 U.S.C. § 1915(e)(2)(B)(i) provides that; "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal, . . . is frivolous or malicious." Thus the appellate court's October 29, 2010 ruling was tantamount to a declaration that this action was also frivolous.

this dismissal. Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 10)  On September

21, 2011, the court of appeals entered an opinion and order dismissing Ball's appeal

as frivolous  pursuant to 28 U.S.C. § 1915(e)(2)(B).  That appellate court opinion and

order spoke unambiguously regarding the frivolous nature of this particular lawsuit

filed by Ball, stating in clear and precise terms that:

> Because we too have granted Ball leave to proceed IFP, we must screen
> this appeal to determine whether it is frivolous. *See* 28 U.S.C. §
> 1915(e)(2)(B)(i). An appeal is frivolous if it "lacks an arguable basis
> either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325
> (1989).This appeal lacks any such basis. As the District Court adequately
> explained, immunity extends even to judicial acts that are "done
> maliciously," and Ball has alleged nothing suggesting that Judge Butts
> acted in the "clear absence of all jurisdiction." Gallas v. Supreme Court
> of Pa., 211 F.3d 760, 769 (3d Cir.2000) (citation and internal quotation
> marks omitted). To the extent that Ball's request for injunctive relief
> might not have been subject to dismissal under § 1915(e)(2)(B)(iii), it
> was subject to dismissal under § 1915(e)(2)(B)(ii) because such relief is
> not available against "a judicial officer for an act ... taken in such
> officer's judicial capacity" under these circumstances. 42 U.S.C. § 1983.
> Finally, we are satisfied that any amendment of Ball's complaint would
> be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d
> Cir.2002). Thus, we will dismiss this appeal.

Ball v. Butts, No. 11-2862,  2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

## B.    Ball's Current Lawsuit

### 1.    Ball's Initial Complaint and the Court's January 2010 Screening Review

It is against this backdrop that Ball instituted the current lawsuit.  Ball's *pro se*

civil rights complaint was initially filed almost 32 months ago, on May 5, 2009. (Doc.

1) A screening review of this initial complaint conducted by the district court revealed that it was inscrutable, and often illegible.  The complaint named approximately 76 defendants, and contained a bewildering hodgepodge of claims.  As the district court observed:

> Ball sets forth a plethora of claims in her handwritten complaint which consists of fifteen (15) pages back and front. The document, as submitted, is difficult to read. She alleges claims against seventy-six (76) Defendants including, but certainly not limited to, mail interference, assault, denial of medical treatment, inhumane treatment and denial of access to the courts. There are also numerous claims involving the denial of proper nutrition, retaliation involving the use of a restraint chair, the confiscation of property and sexual exploitation. With respect to each of these issues, Ball sets forth many separate incidents. The complaint spans over a year in time, and the claims involve different Defendants/combination of Defendants. Ball seeks injunctive and compensatory relief.

(Doc. 19, p. 2)

Moreover, many of the claims advanced by Ball in her original complaint were set forth in a fashion which can aptly be described as simply "a formulaic recitation of the elements of a cause of actions [which] will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Furthermore, the multiple allegations set forth against these 76 defendants were recited by Ball in a haphazard fashion, without any intelligible temporal, topical, legal or logical relationship between claims and parties.

Presented with this unwieldy pleading the district court concluded that Ball's initial complaint violated Rule 8's proscription that a complaint must set forth a "short and plain" statement of a cause of action, and further found that the complaint failed to abide by Rule 20's direction that:

Person[s] . . . may be joined in one action as defendants if:

> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> **(B)** any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

Having made these findings, the district court instructed Ball to:

> file an amended complaint within fifteen (15) days from the date of this order in accordance with the attached Memorandum. The amended complaint shall carry the same civil docket number (1:09-CV-0846) presently assigned to this matter. The Clerk of Court shall forward to Plaintiff a civil rights form complaint for her use in filing the amended complaint. . . . . The amended complaint must comply with Fed. R. Civ. P. 8 and Fed. R. Civ. P. 20. Should Plaintiff file an amended complaint which complies with Rule 8, but fails to comply with Fed. R. Civ. P. 20(a), the Court will dismiss all but the first count of the amended complaint.

(Doc. 19, p. 5)

Thus, by January 21, 2010, Ball had been notified in clear and precise terms, that this initial complaint was wholly inadequate and had been instructed to cure these defects within fifteen day, or by February 5, 2010.

## 2.   <u>Ball Fails to Comply With These Screening Orders For 680 Days</u>

From this simple instruction and deadline years of delay then ensued.  Thus, Ball failed to comply with this February 5, 2010 filing deadline prescribed by the district court in its January 21, 2010 order.  Instead, two weeks after this deadline for action had passed, on February 19, 2010, Ball filed a belated motion for extension of time in which to amend her complaint.(Doc. 21)  Despite the untimely nature of this filing, the district court granted Ball's request, and on February 25, 2010, Ball was given an additional 30 days in which to file this amended complaint. (Doc. 22)  A second filing deadline of March 25, 2010, was set for Ball to correct this flawed pleading.

This deadline also passed without any action by Ball to comply with this Court's order.  Indeed, more than four months elapsed without any action whatsoever by Ball, a failure to comply with the Court's instructions which compelled the district court to enter an order on July 1, 2010, which "**ORDERED** that Plaintiff shall, within fourteen (14) days from the date of this order, show cause why the above-captioned action should not be dismissed pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute." (Doc. 23, p.2)  Accordingly, Ball now had received a third deadline for filing an amended complaint, July 15, 2010.

This deadline then also passed without any action on Ball's part to comply with the district court's repeated, explicit instructions to file an amended complaint. Instead, of following the Court's instructions, and submitting an amended complaint which complied with Rules 8 and 20, over the following sixteen months, between July 2010 and October 2011Ballsimply wrote several letters to the Court, complaining that court personnel had lost her amended complaint, a claim that was wholly contradicted by the docket in this case which reveals that no such amended complaint was ever received from Ball. (Docs. 24, 25, 27, 29, 31, 32, 33, 34, 36) Moreover, Ball persisted in this curious, non-compliant course despite being notified three times in writing by the Court that it had not received any amended complaint from the plaintiff, and being provided copies of the docket which confirmed this fact. (Docs. 32, 35, 38).

This case was referred to the undersigned for pre-trial management on October 4, 2011. (Doc. 37).  In reviewing the docket, we noted that the plaintiff had been ordered to file an amended complaint 22 months ago, in January of 2010, but had not yet completed this task, despite multiple instructions to do so, and had in fact violated at least three court-ordered filing deadlines.  Accordingly, in order to ensure that Ball complied with the prior January 2010 order of this Court that she file an amended complaint, we entered an order on October 6, 2011, directing Ball to file an amended complaint within 20 days. (Doc. 38)

On the eve of this, the fourth filing deadline set by the Court, Ball filed yet another motion to extend this filing deadline an additional 120 days. (Doc. 44) Ball's motion misstated the background of this litigation.  It neglected to mention that she has been under a court-ordered obligation to amend this complaint for the past 22 months, and erroneously suggested that the delay in filing this amended complaint was the Court's fault.

Because we believed that the filing of an amended complaint was a task should have been accomplished in less than two years, without violating three court orders, we denied Ball's request for a 120-day extension of time to complete this task. Instead, we permitted Ball a total of 680 days from the date in which the district court first told her to amend her complaint, January 21, 2010, to complete this task, and ordered Ball to file an amended complaint on or before December 2, 2011. (Doc. 45) We also warned Ball, in clear and precise terms, that "the failure to complete this task may result in sanctions under Rule 41 of the Federal Rules of Civil Procedure, including possible dismissal of this action for failure to prosecute." (Doc.45, p. 2)

### 3. Ball's Amended Complaint

Ball filed an amended complaint, along with a  motion to amend, and a motion for leave to proceed *in forma pauperis* on December 2, 2011. (Docs. 50, 51, 52 and 53)  We have now completed a screening review of these pleadings, and are confronted with a remarkable circumstance.  Despite having 680 days in which to

accomplish the task of addressing the concerns voiced by the district court on January 21, 2010, Ball's amended complaint corrects none of the deficiencies previously noted in this complaint.  Instead, after more than two years, Ball has filed an amended complaint which actually compounds those longstanding flaws and deficiencies.  In fact, this pleading is not, in any sense of the word, an "amended" complaint.  Rather, Ball's proposed "amended" complaint is a legal misnomer since Ball's "amended" complaint, (Doc. 52), in reality, contains five separate documents, totaling 72 pages, each of which is labeled an "amended complaint" and each of which seems totally unrelated to one another. (Doc. 52)

For example, the first of the amended complaints contained within this document is an eleven page pleading which names 13 defendants, and sets forth an array of complaints regarding, *inter alia*, the mishandling of prison grievances, the adequacy of medical treatment, the receipt of snack bags from staff, disputes regarding sick call appointments, and arguments over hand lotion.  (Doc. 52, pp. 1-11)

Ball's second proposed amended complaint contained within this filing is an 18-page pleading that names 45 defendants. (Doc. 52, pp.12-30)  This pleading also chides staff for their handling of Ball's many, prior grievances, and includes wide-ranging allegations of staff assault, use of excessive force, involuntary placement in a restraint chair, and failure to protect the plaintiff from other inmate assaults. (Id.)

These grave accusations are then juxtaposed with claims of a frivolous nature concerning allegedly abrupt, and impolite conversations with staff, as well as complaints concerning the taste, appeal, presentation and aesthetic appearance of meals offered at the prison. (Id.)

Ball's third proposed amended complaint captioned at Civil No. 1:09-CV-846, is a ten-page document, (Doc. 52, pp. 31-41), which names 14 defendants ranging from the prison superintendent to correctional staff.  This complaint also protests what Ball perceives to be indifferent handling of her multiple grievances, and recites a number of instances in which Ball alleges that her property, including mail, was lost, stolen, delayed or mishandled. (Id.)

Ball's fourth proposed amended complaint, in turn, charges 28 defendants with mishandling grievances, denying Ball toothpaste, razors, showers and soap for disciplinary reasons at times when the toilet in her cell apparently flooded.  (Doc. 52, pp.42-59)  In addition, Ball complains about the quality of fruit offered to her by staff, and protests the loss or damage caused to personal property items during what appear to be repeated episodes of flooding of the toilet in Ball's cell. (Id.)

Finally, the fifth proposed amended complaint tendered by Ball names nine additional defendants, and, *inter alia*, charges these defendants with constitutional infractions arising out of a scuffle between Ball and a fellow prisoner, a scuffle in

which Ball alleges that prison officials failed to protect her, and then falsely convicted her in a disciplinary hearing of fighting. (Doc. 52, pp.60-72)

Taken together then, this amended complaint clearly compounds the flaws initially noted by the Court for the plaintiff in January of 2010. The latest amended complaint is a far more confused, and confusing, document than Ball's initial complaint. Rather than being a "short and plain statement" of a cause of action, as required by Rule 8, this amended complaint is more than twice the length of Ball's original pleading and increases the number of named defendants from 76 to a total of 109 defendants. Furthermore, instead of concisely joining parties in matters arising out of arising out of "the same transaction, occurrence, or series of transactions or occurrences,"in accordance with Rule 20, the proposed amended complaint conflates at least five separate and distinct series of claims, combining these unrelated issues into a single document in a haphazard fashion. Finally, many of the claims advanced by Ball in this prolix pleading are wholly meritless, and the two-year delay to filing an amended complaint, which merely restates and reemphasizes the flaws initially noted for Ball two years ago, in January of 2010, compels consideration of sanctions in this matter, under Rule 41, a prospect that Ball had been explicitly warned as early as July of 2010 could be a consequence of her continuing misconduct.

Having conducted this screening review, for the reasons set forth below, Ball's motion to amend her complaint and motion for leave to proceed *in forma pauperis*

(Docs. 50 and 53),should  be GRANTED, but as part of the court's legally-mandated screening process it is recommended that this amended complaint, in its current form, be dismissed for failure to state a claim upon which relief can be granted.

## II.    Discussion

### A.    Screening of *Pro Se* Prisoner Complaints–Standard of Review

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints which seek redress against government officials.  Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a  prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be  granted; or

> (2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted."  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides

that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal  –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."  Associated Gen. Contractors of Cal. v. California State Council of

Carpenters, 459 U.S. 519, 526 (1983).  As the Supreme Court held in Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a

plaintiff must provide some factual grounds for relief which "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of

actions will not do." Id. at 555.  "Factual allegations must be enough to raise a right

to relief above the speculative level." Id.  In keeping with the principles of Twombly,

the Supreme Court has underscored that a trial court must assess whether a complaint

states facts upon which relief can be granted when ruling on a motion to dismiss.  In

Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009), the Supreme Court held that,

when considering a motion to dismiss, a court should "begin by identifying pleadings

that, because they are no more than conclusions, are not entitled to the assumption of

truth." Id. at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id. at 1949.  Rather, in conducting a review of the adequacy of complaint,

the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal,</u> when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

<u>Fowler</u>, 578 F.3d at 210-11.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  <u>Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); <u>see also</u> <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007).  Thus, we may consider the exhibits which Ball has appended to this amended complaint in assessing whether it states a constitutional claim.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. Applying these standards, we find that this amended complaint, in its present form, is subject to summary dismissal.

## B.   Ball's Current Amended Complaint Fails to Meet the Pleading Standards Prescribed by Law

Judged against these standards, Ball's current *pro se* amended complaint still fails to state a claim upon which relief can be granted.  Indeed, in its present form, the amended complaint remains flawed in the following fundamental respects:

### 1.   Ball's Amended Complaint Violates Rules 8 and 20

At the outset, as presently drafted Ball's amended complaint violates the basic rule of pleading which requires that "a district court . . . determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'   In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 210-11.  Furthermore, dismissal of this amended complaint is also warranted because the complaint fails to comply with Rule 8's basic injunction that: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."

It is well-settled that: "[t]he  Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)." Scibelli v. Lebanon County, 219 F. App'x 221, 222 (3d Cir. 2007).  Thus, when a complaint is "illegible or incomprehensible", id., or when a complaint "is also largely unintelligible," Stephanatos v. Cohen,  236 F. App'x 785, 787 (3d Cir. 2007), an order dismissing a complaint under Rule 8 is clearly appropriate.  See, e.g., Mincy v. Klem, 303 F. App'x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F. App'x 513 (3d Cir. 2008); Stephanatos v. Cohen. supra;  Scibelli v. Lebanon County, supra;  Bennett-Nelson v.

La. Bd. of Regents, 431 F.3d 448, 450 n.1 (5th Cir. 2005).  Furthermore, dismissal

under Rule 8 is proper when a complaint "left the defendants having to guess what

of the many things discussed constituted [a cause of action];"   Binsack v.

Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011), or when the complaint

is so "rambling and unclear" as to defy response. Tillio v. Spiess, No. 11-1276, 2011

WL 3346787 (Aug. 4, 2011).  In the first instance Rule 8 dismissals are often entered

without prejudice to allowing the litigant the opportunity to amend and cure any

defects.  However, in cases such as this, where a litigant persistently fails to abide by

the court's instructions, the failure to timely submit a proper amended complaint that

complies with the strictures of Rule 8 may then warrant the dismissal of the complaint

with prejudice.  See, e.g., Mincy v. Klem, 303 F. App'x 106 (3d Cir. 2008); Rhett v.

New Jersey State Superior Court, 260 F. App'x 513 (3d Cir. 2008); Stephanatos v.

Cohen. supra;  Scibelli v. Lebanon County, supra.

Here, as a threshold matter we find that Ball's amended complaint is, in reality,

five different complaints, naming 109 defendants, each of which is entirely unrelated

to one another.  Ball provides no explanation for this odd and convoluted style of

pleading, which conjoins five separate complaints in a single document.  Nor does

she explain how we are to construe this curious pleading.  Therefore, we find that

Ball's efforts to conflate five separate civil complaints into one document are, by

definition, inconsistent with the guiding principle that a civil complaint should be a

short and plain statement of a cause of action, and call for dismissal of this amended complaint.

Moreover, Ball's apparent acknowledgment in her pleading that at least five separate sets of distinct and unrelated allegations lurk within this amended complaint raises another basic and pervasive flaw with this pleading. This amended complaint collects a series of distinct claims, involving diverse parties, and disparate acts which are alleged to have occurred at different times. The joinder of these plainly divergent claims in a single lawsuit is inappropriate under the rules governing joinder of defendants in federal litigation, which provide, in part, that:

> Person[s] . . . may be joined in one action as defendants if:
> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of *the same transaction, occurrence, or series of transactions or occurrences*; and
> **(B)** any question of law or fact common to all defendants will arise in the action.

Fed. R.Civ. P. 20(a)(2)(emphasis added).

In this case, it cannot be said from Ball's amended complaint that these allegations arise out of the same transaction, occurrence or series of transactions or occurrences. Quite the contrary, Ball herself plainly defines these episodes as at least five separate transactions, but still attempts to amass this array of disparate acts, allegedly committed by different actors at divergent times and places, into a single

pleading. "[G]iven the hodgepodge of claims raised in the . . .complaint," <u>Boretsky</u> <u>v. Governor of New Jersey</u>, No.08-3313, 2011 WL 2036440, *3 (3d Cir. May 25, 2011), this Court may properly, in the exercise of its discretion, dismiss this amended complaint, and require Ball to file separate complaints relating to what she seems to acknowledge are five factually distinct claims. (<u>Id</u>.)

###### C.    **Many of Ball's Substantive Claims Fail as a Matter of Law**

Furthermore, in many instances the various constitutional claims made by Ball simply fail as a matter of law.  These flawed legal claims are discussed separately below:

###### 1.    **Ball's Amended Complaint Does Not Consistently Allege The Requisite Degree of Personal Responsibility By Individual Defendants**

Given the fact that Ball endeavors to name 109 defendants in this amended complaint, it is hardly surprising to note at the outset that in many instances the allegations of personal involvement and culpability set forth in this pleading are inadequate.  This failure to properly allege personal involvement by various defendants is a fatal flaw in this pleading since it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, a prison supervisor, or prison official when the incidents set forth in the complaint occurred.  Quite the contrary, to state a

constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution.  Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980).  Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice.  Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position

wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004).

Rather, "[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006).  Therefore, to the extent that Ball fails to consistently make such allegations of personal knowledge, involvement, direction or acquiescence in wrongful acts, her complaint fails to state a claim upon which relief may be granted.

## 2.   Ball's Complaints About Unappetizing Food Are Unavailing

In other instances, the gist of Ball's complaint seems to be that she was offered food which was cold, unappetizing or poorly presented.  Such claims simply do not

state an infraction of constitutional dimension.  Liberally construed, the gravamen of

the aspect of Ball's complaint is that prison officials violated Ball's rights under the

Eighth Amendment to the United States Constitution by displaying "deliberate

indifference" to this inmate's dietary  needs when they fed her unappetizing meals,

or occasionally failed to deliver her meals in a timely fashion.  Ball faces an exacting

burden in advancing these Eighth Amendment claims against prison officials in their

individual capacities.  To sustain such claims, Ball must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be,
> objectively, sufficiently serious;" and (2) the "prison official must have
> a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825,
> 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and
> citations omitted). In prison conditions cases, "that state of mind is one
> of 'deliberate indifference' to inmate health or safety." Id. "Deliberate
> indifference" is a subjective standard under Farmer-the prison official-
> defendant must actually have known or been aware of the excessive risk
> to inmate safety.

Beers-Capitol v. Whetzel,256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark,

the courts have held that a mere generalized knowledge that prisons are dangerous

uncomfortable or unpleasant places does not give rise to an Eighth Amendment claim.

See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment

violation where inmate-plaintiff complained about cellmate who had a history of

psychological problems, but where plaintiff failed to articulate a specific threat of

harm during the weeks prior to an attack.)   In short, when "analyzing deliberate

indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' <u>Farmer v. Brennan</u>, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' <u>Id</u> . at 837." <u>Garvey v. Martinez</u>, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to conditions of confinement claims like those apparently advanced by Ball. In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting <u>Trop v. Dulles</u>, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)

<u>Atkinson v. Taylor</u>, 316 F.3d 257, 272 (3d Cir. 2003).

As for Ball's conditions-of-confinement claim relating to the appearance and appeal of her prison food, courts frequently rebuff inmate complaints like those made here relating to the packaging and presentation of meals. Thus, "while prisoners are guaranteed a nutritionally adequate diet under the Eighth Amendment, <u>see</u> <u>Ramos v. Lamm</u>, 639 F.2d 559, 571 (10th Cir.1980), there is no constitutional right to hot meals. <u>See</u> <u>Brown-El v. Delo</u>, 969 F.2d 644, 648 (8th Cir.1992) (finding frivolous prisoner's claim that his constitutional rights were violated when he was served cold

food)." Laufgas v. Speziale, 263 F.App'x. 192, 198 (3d Cir. 2008).  Similarly, the

"purported deprivation of a single meal is not of such magnitude as to rise to the level

of a constitutional violation. See Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir.1983)

(only a substantial deprivation of food to a prisoner sets forth a viable Eighth

Amendment claim)." Lindsey v. O'Connor, 327 F. App'x. 319, 321 (3d Cir. 2009).

Nor does the presentation of  food in an unappetizing fashion, by itself, violate the

Eighth Amendment.  Quite the contrary, with respect to this prison diets it is well-

settled that:"[U]nappetizing food served in prison is not constitutionally actionable.

Maldonado v. McFaden, No. 94–1477, 1994 U.S. Dist. LEXIS 16837, at *11 (E.D.Pa.

Nov. 23, 1994) ('[T]he Eighth Amendment requires only that inmates be provided

food that is adequate to maintain health, and served in a sanitary manner.')." Jones

v. Beard, No. 10-5544, 2011 WL 3611470, *8 (E.D.Pa. August 16, 2011).  Therefore,

Ball's complaints regarding the appeal and presentation of her meals simply do not

rise to the level of a constitutional infraction.  Furthermore, Ball cannot save this

claim through her bald assertion that prison staff " used  food as punishment."  Such

an assertion, without any further supporting facts, is simply "a formulaic recitation

of the elements of a cause of actions [which] will not do." Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 555 (2007).

3. **Ball Has Failed to State a Valid Due Process Claim Arising Out of Prison Discipline**

In this amended complaint Ball also apparently complains about the outcome of a disciplinary hearing into an affray between Ball and a fellow prisoner, an affray which appears from Ball's account to have involved a mutual exchange of blows. To the extent that Ball's complaint attacks the fairness of this disciplinary proceeding, Ball fundamentally misconstrues the role of the federal courts in prison disciplinary matters. In bringing constitutional claims against correctional officers arising out of prison disciplinary hearings, Ball faces an exacting burden of proof. It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974). The

requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Meyers, 492 F.2d at 306.  In the past, inmates have often invited courts to find violations of this due process right based upon general assertions of staff bias.  Yet, such requests, while frequently made, have rarely been embraced by the courts.  Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009).  Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston,  288 F. App'x 797, 799 (3d Cir. 2008), courts generally decline to sustain due process challenges to disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F. App'x 488 (3d Cir. 2007).

A prison disciplinary determination comports with due process if it is based on "some evidence."  See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board").  This standard is minimal and does not require examination of the entire record, an independent

assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989).  Therefore, it is well settled that disciplinary decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986).  Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [hearing officer]." Freeman, 808 F.2d at 954.  As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456.

Provided that a prisoner is afforded these due process protections during the disciplinary hearing process, it is well-settled that a claim that a misconduct report was false, standing alone, does not state a valid Bivens cause of action.  As the United States Court of Appeals for the Third Circuit has aptly observed: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long

as procedural due process protections were provided. See e.g., Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)." Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007). See also Booth v. Pence, 141 F. App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002). Moreover, in a prison discipline context, an inmate's retaliation claim fails whenever the defendant shows that there is "some evidence" to support the discipline citation. As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . See Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." Nifas v. Beard, 374 F. App'x 241, 244 (3d Cir. 2010). Finally, while prison disciplinary procedures should afford an inmate a reasonable opportunity to attend a hearing, the hearing may proceed without the prisoner if the inmate refuses to attend. Pressley v. Blaine, 352 F. App'x 701 (3d Cir. 2009).

Here the pleadings submitted by Ball reveal that all of the procedural requisites for a disciplinary hearing were satisfied. Furthermore, it is evident from Ball's submissions that the disciplinary decision that she was involved in some type of fight

with a fellow prisoner was supported by "some evidence," a finding which negates any due process claims in this setting.  Therefore, these claims also fail.

4.      **Ball's General Complaints About Conditions In the RHU Fail to State a Claim Upon Which Relief May Be Granted**

Fairly construed, much of what can be discerned from this amended complaint is essentially a general critique of the conditions of confinement which confront disruptive inmates in the restricted housing units of Pennsylvania's state prisons. Without in any way diminishing these stark conditions of confinement, which are compelled by security concerns stemming from the nature of the inmate population housed in these units, we note that any general constitutional challenge to conditions at these restricted housing units fails because "the federal . . .  courts unanimously have found that the . . . conditions of confinement in the various restrictive housing units in the Pennsylvania state institutions, . . ., without more, do[] not violate the [constitution]. See, e.g., Griffin v. Vaughn, 112 F.3d 703 (3d Cir.1997) (holding that the restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment); Pressley v. Johnson, 268 F. App'x 181, 183 (3d Cir.2008) (same); Walker v. Campbell, Civ. No. 09–282, 2010 WL 2891488 (W.D.Pa. May 4, 2010) (same); Fortson v. Kelchner, Civ. No. 08–532, 2009 WL 693247, at *3 (W.D.Pa. Mar.13, 2009) (granting defendants' motion to dismiss as to plaintiff's eighth amendment

claim regarding confinement in the RHU and SMU); <u>Milhouse v. Arbasak</u>, Civ. No.

07–01442, 2009 WL 1119488, 3 (E.D.Pa. April 27, 2009) (holding that mere

placement in SHU did not violate the Eighth Amendment); <u>Pressley v. Blaine</u>, 544

F.Supp.2d 446, 453 (W.D.Pa.2008) (holding that 1080 days of disciplinary

confinement did not implicate the Eighth Amendment); <u>Dantzler v. Beard</u>, Civ. No.

05–1727, 2007 WL 5018184, at *11–12 (W.D.Pa. Dec.6, 2007) (holding that the

conditions of confinement in the SMU and LTSU did not amount to cruel and unusual

punishment in violation of the Eighth Amendment); <u>Woods v. Abrams</u>, Civ. No.

06–757, 2007 WL 2852525, 14 (W.D.Pa. Sep.27, 2007) (holding that the conditions

of confinement in the LTSU did not satisfy the objective component of an Eighth

Amendment claim); <u>[Gary] Banks v. Beard,</u> Civ. No. 03–659, 2006 WL 2192015, at

*11 (W.D.Pa. Aug.1, 2006) (same)." <u>Norris v. Davis</u>, No.10-1118, 2011 WL

5553633, *6 (W.D.Pa Nov. 15,2011).  Therefore, this amended complaint may not

serve a s a vehicle for a general attack upon the penal system in Pennsylvania's RHU

units.

### 5. **Ball May Not Convert Her Displeasure With the Processing of Administrative Grievances into a Constitutional Tort Claim**

Another recurring theme in this amended complaint is Ball's dissatisfaction

with the handling of her many administrative grievances.  This broad claim also fails.

Inmates like Ball cannot sustain claims against prison officials based solely upon

assertions that those officials failed to adequately respond their past grievances. Inmates do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Union, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely

on the operation of *respondeat superior* ); see also Antonelli v. Sheahan,
81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures
do not give rise to a liberty interest protected by the Due Process Clause).

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

In sum, it is clearly established that inmates have no constitutional right to a

grievance procedure in prison. See, e.g., Rivera v. Dep't of Corrections, 3466 F.

App'x 749 (3d Cir. 2009); Smith v. Lycoming County, 335 F. App'x 147 (3d Cir.

2009); Bartelli v. Galabanski, 225 F. App'x 194 (3d Cir. 2007).  Therefore, the

existence of a grievance procedure does not confer any substantive constitutional

rights on inmates like Ball, Bartelli v. Jones, 231 F. App'x 129 (3d Cir. 2007), and

Ball's otherwise unadorned complaints about the handling of her grievances fail as

a matter of law.

**6.     Ball's Due Process Claim Involving Confiscation of Her Property Fails As a Matter of Law**

Further, our screening review of this amended complaint reveals another

substantive flaw in this pleading.  In some instances, the gravamen of Ball's claims

seems to be that prison officials lost or confiscated her property without due process.

However, Ball's amended complaint also suggests that she grieved many of these lost

property claims, factual recitals which rebut these due process claims.  Inmate due

process claims arising out of the confiscation of property are judged against settled

legal standards, standards which recognize that:

> Like other constitutional rights, the Due Process rights of prisoners may be accommodated to a prison's legitimate security needs. See Bell v. Wolfish, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). [Therefore] "[A]n unauthorized intentional deprivation of property" by prison officials does not violate the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)(citing Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Predeprivation notice is not constitutionally required. See id.

Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008).

Thus, a crucial component to any inmate due process claim in this setting is an allegation that property was taken and the prisoner was afforded no post-deprivation administrative remedy.  Therefore, where an inmate is afforded a meaningful post-deprivation due process remedy, an inmate's constitutional complaints regarding loss or taking of property typically fail. See, e.g., Watson   v. Secretary, Dep't of Corrections, 436 F. App'x 131, 135 (3d Cir. 2011); Bowens v. United States Dep't of Justice, 415 F. App'x 340, 344 (3d Cir. 2011).  These settled legal tenets, in turn, are fatal to any property loss or confiscation due process claims made by Ball where Ball received meaningful post-deprivation relief on these property claims.

### D.     **Dismissal of this Case Is Also Warranted Under Rule 41**.

Beyond its overall lack of legal merit, this case now presents the Court with an extraordinary circumstance:  a litigant who has failed to file an amended complaint for two years and who has disregarded at least three orders setting deadlines for the filing of this pleading.  This litigant has failed to comply with these deadlines even

after being informed as early as July of 2010 that dismissal of her case under Rule 41 may be one consequence of her refusal to comply with the Court's directions. Furthermore, when the plaintiff finally complied with this Court's January 21, 2010 order and filed an amended complaint, it is clear from our review of that amended complaint that Ball completely ignored the Court's explicit instructions, and persisted in filing claims which she had been told were improper and inadequate.

On these remarkable facts, we are compelled to consider the requirements of Rule 41(b) of the Federal Rules of Civil Procedure which authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the

meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a district court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, No. 10-1877, 2011 WL 2489897, *3 (3d Cir. June 23, 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008))  Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a district court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus, 538 F.3d at 263.  Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus,  538 F.3d at 263.  However, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the <u>Poulis</u> factors weighs heavily in favor of dismissing this action.  At the outset, a consideration of the first <u>Poulis</u> factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the Plaintiff, who has persistently failed to abide by court orders, and has neglected to properly litigate this case for years, before filing a wholly deficient amended complaint.

Similarly, the second <u>Poulis</u> factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action.  Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration.  As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." <u>Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund</u>, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." <u>Id</u>. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. <u>Id.</u>; <u>see also</u> <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 222 (3d Cir.2003); <u>Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.</u>, 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." <u>Ware</u>, 322 F.3d at 222. Oftentimes, this type of prejudice involves disputes between the parties on discovery matters because the defendants were deprived of necessary information or had to expend costs to obtain court orders for compliance. <u>See, e.g., Poulis</u>, 747 F.2d at 868 (finding that the defendants were prejudiced where the plaintiffs did not answer

> interrogatories,the defendants had to file a motion to compel the plaintiffs' answers, and the defendant had "to file its pre-trial statement without the opportunity to review plaintiffs' pretrial statement which was due to be filed first"); Ware, 322 F.3d at 220-23 (affirming the District Court's conclusion that a defendant had been prejudiced where the plaintiff repeatedly ignored the defendant's discovery request for the plaintiff's computation of damages and did not provide it until one week prior to trial).

Briscoe v. Klaus, 538 F.3d at 259-60.

In this case the Plaintiff has chosen to level serious charges against more than 100 correctional defendants, but has neglected to file a proper amended complaint for several years, and now tenders an amended complaint which remains as fundamentally flawed as the original pleading which she submitted in May of 2009. On these facts, Ball's on-going failure to properly litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action.  In such instances, these 100 defendants are plainly prejudiced.

Such prejudice flows from "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 8774 (3d Cir.1994).  However, it is clear that the type of prejudice which may warrant dismissal of claims under Poulis is not simply limited to prejudice that causes an "irremediable" or "irreparable" harm in the defense of the case. Id.  In this context, prejudice justifying dismissal of claims as a sanction may also include such things as: "'the burden imposed by impeding a

party's ability to prepare effectively a full and complete trial strategy.' <u>Ware</u>, 322 F.3d at 222.  Where, as here, defendants have suffered an on-going prejudice due to the persistent misconduct by a plaintiff, dismissal of the case clearly rests in the discretion of the trial judge. <u>Tillio v. Mendelsohn</u>, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); <u>Reshard v. Lankenau Hospital</u>, 256 F. App'x 506  (3d Cir. 2007) (failure to comply with discovery compels dismissal); <u>Azubuko v. Bell National Organization</u>, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third <u>Poulis</u> factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate.  In this regard, while it is evident that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders.' <u>Adams,</u> 29 F.3d at 874; [it is also clear that] conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness.'" <u>Briscoe v. Klaus,</u> 538 F.3d at 260-61 (some citations omitted).  Here, over the span of several years, the plaintiff has failed to timely file pleadings,  and has not complied with orders of the Court.  Thus, Ball's conduct in this litigation amply displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-

response . . ., or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff.  In this setting we must assess whether Ball's conduct reflects mere inadvertence, or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994).  Here, we find that the plaintiff's actions were willful, and reflect a pattern of willfulness.  At this juncture, when the plaintiff has repeatedly over the span of years failed to comply with instructions of the Court directing the plaintiff to take specific actions in this case, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders,  lesser sanctions may not be an effective alternative. See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191.  This case presents such a situation where the Plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to

ensure that this litigation progresses in an orderly fashion.  In any event, by entering

our prior orders, and counseling the plaintiff on her obligations in this case, we have

endeavored to use lesser sanctions, but to no avail.  The plaintiff still declines to obey

court orders, and otherwise ignores her responsibilities as a litigant.  Since lesser

sanctions have been tried, and have failed, only the sanction of dismissal remains

available to the Court.

Finally, under Poulis we are cautioned to consider one other factor, the

meritoriousness of the plaintiff's claims.  In our view, however, consideration of this

factor cannot generally save this particular plaintiff's claims, since as we have already

noted many of Ball's claims are wholly without merit.  In any event Ball cannot assert

the untested merits of a few remaining claims as grounds for denying a motion to

sanction her for litigation misconduct and failing to comply with court orders.  It is

well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and

it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a

complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus,   538 F.3d at 263.

Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone,

cannot defeat this sanctions motion.  In sum, for the past two years Dawn Ball has

ignored and disobeyed the orders of this Court, while disregarding her pleading

obligations.  Therefore, dismissal of this complaint is also fully justified under Rule

41.

**E.** **With the Exception of Ball's Eighth Amendment Staff Assault Claims, Which Should Be Dismissed Without Prejudice, All of Ball's Remaining Claims Should Be Dismissed With Prejudice**

Having conducted this screening analysis and determined that Ball's amended complaint is still wanting in multiple respects, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, See Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). With respect to the claims and defendants set forth in this amended complaint, over the past two years this Court has previously provided the plaintiff with multiple opportunities to amend these pleadings, but to no avail. The current amended complaint still fails to state a viable civil rights cause of action against these prison officials, and actually repeats assertions that were previously found to be legally insufficient. Since the plaintiff has been afforded ample opportunity to correct the deficiencies identified in her prior complaint with respect to these defendants, has failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of many of the allegations in this amended complaint make it clear that she has no right to relief, granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

Therefore, with one exception set forth below, it is recommended that the amended complaint be dismissed without further leave to amend.

While our screening analysis would permit dismissal of this action with prejudice in its entirety, we note that among the many frivolous claims contained in this pleading are several Eighth Amendment claims which level grave accusations of physical or sexual abuse of the plaintiff.  Despite Ball's repeated misconduct in the course of this litigation, given the gravity of these factual assertions and mindful of the fact that we must accept  as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff, Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994), we recommend that Ball be given another, final opportunity to further litigate these Eighth Amendment assault claims only by endeavoring to promptly file a proper amended complaint stating these claims.  We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).   Accordingly, it is recommended that the Court provide the plaintiff with a final opportunity to correct

these deficiencies in the *pro se* complaint, by dismissing this deficient amended complaint as to these Eighth Amendment assault claims only without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court.

### III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED as follows: Ball's motion to amend her complaint and motion for leave to proceed *in forma pauperis* (Docs. 50 and 53),should be GRANTED, but the Plaintiff's amended complaint should be dismissed with prejudice as to all claims set forth in this amended complaint, except the Eighth Amendment staff assault claims advanced by Ball.   With respect to these Eighth Amendment staff assault claims only, the plaintiff's amended complaint should be dismissed without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acts on or before March 1, 2012, and the plaintiff should be placed on notice that the failure to complete this task will result in sanctions under Rule 41 of the Federal Rules of Civil Procedure, including dismissal of this action for failure to prosecute.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file

with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 17th day of January 2012.


*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge